[PUBLISH]

In the

# United States Court of Appeals

## For the Eleventh Circuit

_____

No. 22-11118

_____

PRN REAL ESTATE & INVESTMENTS, LTD.,

Plaintiff-Appellant,

*versus*

WILLIAM W. COLE, JR.,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Middle District of Florida
D.C. Docket No. 6:21-cv-711-WWB

_____

2                    Opinion of the Court                    22-11118

Before JILL PRYOR and GRANT, Circuit Judges, and MAZE,[*] District
Judge.

MAZE, District Judge:

William W. ("Bill") Cole, Jr., petitioned for Chapter 7
bankruptcy and listed PRN Real Estate & Investments, Ltd.
("PRN") as his primary creditor. PRN sought to exempt debts that
Cole owes PRN from being discharged. The bankruptcy court
granted judgment for Cole on all of PRN's claims and fully
discharged Cole's debt. The district court affirmed.

For the reasons explained below, we agree with each of the
bankruptcy court's rulings except one: we find that PRN pleaded a
viable discharge exception in Count 3. We therefore **AFFIRM IN
PART** and **REVERSE IN PART** the bankruptcy court's rulings and
**REMAND** for further proceedings.

## I. BACKGROUND

Bill Cole and Nancy Rossman partnered to develop
residential real estate for more than a decade. But their relationship
has since devolved into what the bankruptcy court described as
"open warfare." In short, Rossman claims that Cole sought
bankruptcy to avoid paying the $15-plus million debt he owed
Rossman's company, PRN. She also claims that Cole committed
multiple acts of fraud to place his assets out of PRN's reach. The

---

[*] Honorable Corey L. Maze, United States District Judge for the Northern
District of Alabama, sitting by designation.

resulting fight has spilled across multiple state and federal courts, returning now to us for a second time.

## A. Cole's Debt to PRN

Bill Cole has worn many hats: accountant, CFO, and real estate developer. As a developer, Cole would identify lucrative projects, then find investors and builders. Cole managed the projects on both ends, funding and construction. Some projects he managed through entities that he created for the project; others he managed with his partner, Allan Goldberg, through their joint business, C&G Real Estate Group, LLC ("C&G").

Nancy Rossman and her sisters owned PRN. PRN pumped millions of dollars into C&G projects starting in 2000. For the next eight years, Rossman's relationship with Cole was amicable and financially successful. Then the recession hit.

In 2008, Cole's projects were struggling. So PRN agreed to lend extra capital to Cole. In return, Cole agreed to personally guarantee the loans. But Cole could not repay the loans when they came due in November 2011.

So Cole and Rossman amended their 2008 agreement in 2012. Among the amended terms, Cole agreed to cut his partner Allan Goldberg out of the projects. Cole agreed to continue old projects that included PRN and to allow PRN to invest in Cole's new projects. And Cole agreed that he would pay a percentage of his project income to PRN and provide detailed financial reports to PRN to ensure Cole was upholding his end of the bargain.

Cole eventually breached his duties under the 2012 Agreement. Rossman and PRN filed their first lawsuit against Cole in Florida state court in July 2014. One year later, Cole filed for Chapter 7 bankruptcy. That petition is now before this Court. But before we can discuss Cole's petition, we must detail some of Cole's actions leading up to its filing.

## B. Alleged Fraud

PRN claims that Cole committed several fraudulent acts to shield his money from PRN before and after Cole filed his Chapter 7 petition. Three are relevant here.

### 1. The COLP Transfers

In 2002, Bill Cole and his wife Terre formed Cole of Orlando Limited Partnership ("COLP"), a Nevada entity, to hold their investments. Each spouse owned a 49.5% interest in COLP through his or her respective revocable trusts. The remaining 1% was held by W&T Cole, LLP, another Nevada entity that the Coles owned as tenants by the entireties.

Over the years, COLP held stocks, bonds, and brokerage accounts. Relevant here, COLP also incurred debts related to projects involving Cole and PRN.

In 2003, SunTrust Bank loaned $7.5 million to Douglasville Development, LLC and Sweetwater Investment Properties, LLC. Thirteen individuals and entities jointly and severally guaranteed the loan, including Bill Cole, Terre Cole, Rossman, Goldberg, PRN, and COLP.

In August 2004, SunTrust Bank loaned $1.21 million to RANC Development, Inc. Ten individuals and entities jointly and severally guaranteed the loan, including Bill Cole, Terre Cole, Rossman, Goldberg, PRN, and COLP.

Both Douglasville and RANC defaulted on their loans, making the co-guarantors jointly and severally liable to SunTrust. In September 2011, PRN agreed to pay SunTrust $5 million to settle these and other debts. None of the co-guarantors paid PRN contribution.

Two months later (November 2011), Cole's debt to PRN under their 2008 agreement matured. PRN notified Cole of his default on December 15, 2011. At the time, Cole owed PRN more than $12 million.

Over the next four weeks, Cole transferred about $4 million from COLP's coffers into a Florida-based account held by Bill and Terre Cole as tenants by the entireties, thereby shielding the money from Cole's creditors under Florida law. The COLP transfers are relevant in two proceedings besides this one.

First, PRN sued its co-guarantors under the Douglasville and RANC notes for contribution in Florida state court. *See PRN Real Est. & Invs., Ltd. v. Cole*, Fla. Orange County Ct., Case No. 2014-CA-011835-O. PRN named COLP and Bill Cole (among others) as defendants. PRN sought the following contribution from COLP: $213,113.71 as co-guarantor of the Douglasville Note and $187,121.46 as co-guarantor of the RANC Note.

Second, the Bankruptcy Trustee sought to avoid the COLP transfer as a fraudulent conversion of non-exempt assets into exempt assets and to retrieve Cole's personal interest for the estate. *See* 11 U.S.C. § 544(b)(1) (allowing the Trustee to avoid transfers under applicable state law); 11 U.S.C. § 550(a) (allowing the Trustee to recover fraudulent transfers for the estate). The bankruptcy court granted summary judgment for the Trustee by finding that Cole controlled the transfers, and that Cole transferred the money "actually intending to hinder, delay, and defraud his creditors, primarily PRN."

The bankruptcy court did not quantify Cole's personal interest in the COLP transfers, leaving that issue for trial. But Cole and the Trustee settled the claim before trial. Under the settlement agreement, Cole paid $350,000 to the estate and agreed that his settlement with the Trustee did not affect PRN's claims in this case and the previously mentioned state case.

## 2. Coledev

In October 2012, Cole formed Coledev LLC to serve as his primary operating business. Coledev was a closely held S corporation. Bill and Terre Cole owned 99% of Coledev as tenants by the entireties, with their son owning the remaining 1%.

Shortly after forming Coledev, Bill and Terre Cole transferred about $1.18 million to Coledev to fund operations. Money flowed freely between the Coles and Coledev for the next three years. Then, shortly after Bill Cole filed his bankruptcy

petition in July 2015, Coledev transferred $750,000 to a construction business primarily owned (95%) by Terre Cole, and about $250,000 to the Coles' joint bank account.

Cole's Trustee argued that Coledev's postpetition transfer was a repayment of a shareholder loan that Cole must turn over to the estate under 11 U.S.C. § 542. Cole countered that the Coles' initial $1.18 million transfer to Coledev was an equitable contribution and thus Coledev was repaying a capital contribution; a payment that needn't be turned over to the estate.

The bankruptcy court sided with Cole, finding that the initial 2012 transfer of money to Coledev was a capital contribution (not a loan), so the 2015 transfer of money out of Coledev was an equity repayment. The court thus issued judgment that the $1 million transfer need not be turned over to the estate.

The Trustee appealed but later waived the appeal as part of the previously mentioned settlement that saw Cole pay $350,000 to the estate.

### 3. Homestead Fraud

When Cole filed his petition in July 2015, Bill and Terre Cole lived in a 10,000 square foot lakefront home. Cole held title to the property under a self-settled revocable trust. Cole's original title listed the property as a single 2.95-acre parcel of land, with most of the land (2.185 acres) under water.

The Florida Constitution exempts a debtor's homestead from forced sale after bankruptcy but limits the exemption to 0.5

acres if the homestead is within a municipality. *See* Fla. Const. art. X, § 4. Because Cole's 2.95-acre property was in a municipality, it was too big for the exemption. So Cole split the property.

Two days after a failed mediation with Rossman, Cole asked a surveyor to divide his property into two parcels. The first contained the house, boathouse, and dock. The second parcel contained everything else, including all of the submerged land. Just before filing his bankruptcy petition, Cole executed and recorded special warranty deeds that conveyed the newly split parcels from the trust to the trust.

Cole filed his petition, and soon after, his schedules. In them, Cole listed the two parcels separately. Cole gave the street address for the smaller, dry-land parcel and valued it at $2.5 million. Cole generically labeled the larger, mostly submerged parcel and valued it at $1,000. Cole did not state the size of either parcel in his schedules, nor did he list them as contiguous.

Both PRN and the Trustee objected, claiming that Cole fraudulently split his property to shield the valuable portion from the estate. The bankruptcy court held a two-day trial then issued a written opinion. In it, the court found that Cole's schedules were "misleading" and that his testimony explaining the split was "not credible."

Yet "[d]espite Mr. Cole's inequitable and incredulous attempt to gerrymander his homestead exemption," the bankruptcy court found that Florida law required the court to grant

Cole the homestead exemption. To undo the fraud, the court treated the property as indivisible and held that Cole was entitled to 16.95% of the forced sale of the whole—*i.e.*, the 0.5-acre homestead exemption limit divided by the entire 2.95-acre parcel.

The district court affirmed, as did this Court. *See Cole v. PRN Real Est. & Invs., Ltd.*, 829 Fed. App'x 399 (11th Cir. 2020).

## C. The Bankruptcy Court's Opinions

Cole filed his Chapter 7 petition and listed PRN (among others) as a creditor. PRN filed an adversary proceeding. *See* Fed. R. Bankr. P. 7001. In its operative complaint, PRN pleaded 13 counts that sought to deny Cole a discharge under 11 U.S.C. § 727, or in the alternative, to except certain debts from discharge under 11 U.S.C. § 523. In this appeal, only Counts 3-4, 8-9, and 11 matter. So we do not discuss the other counts.

1. **Counts 3-4** sought to exempt from discharge some portion of the $4 million transfer from COLP to the Coles' tenancy by the entireties ("TBE") account—*i.e.*, the transfer the bankruptcy court found fraudulent under Florida law at the Trustee's behest. The bankruptcy court granted Cole summary judgment on these claims, ruling orally that "I believe that PRN is asking for a cause of action that just isn't there, and to the extent that it ever could be there, it would belong to the Trustee."

The Honorable Cynthia Jackson held a trial on all other counts in October 2018. Judge Jackson, however, could not issue a posttrial opinion because of medical concerns. The case was thus

reassigned to the Honorable Karen S. Jennemann, who recalled Cole and the Trustee to testify in October 2020. Judge Jennemann later granted judgment for Cole on all remaining counts.

**2. Counts 8 and 9** sought a complete denial of discharge under 11 U.S.C. §§ 727(a)(2)(A) and 727(a)(2)(B), respectively. Relevant here, PRN argued that Cole fraudulently concealed the splitting of his homestead into two parcels and fraudulently concealed the assets he received from Coledev by mislabeling his initial contributions as equity rather than shareholder loans.

As for the Coles' homestead, the bankruptcy court reiterated its earlier ruling that Cole knowingly manipulated the parcels to shield his home from becoming part of the estate. Still, the court found that Cole had not "concealed" either parcel from the Trustee, as required by § 727(a)(2), because Cole (1) listed both parcels in his schedules and (2) told the Trustee about the division when Cole first met her. The court also noted that, after its earlier ruling that unified the parcels, the property sold for $2.25 million—nearly the same amount Cole estimated ($2.5 million). So the estate had not been harmed by Cole's misconduct.

As for Coledev, the court noted that "all parties knew of [Cole's] ownership interest" in Coledev because Cole listed it in his schedules. The court found the disagreement over labeling Cole's contributions as equity versus loans to "make[ ] no difference" when it came to concealment because those labels "are often meaningless" when it comes to closely held corporations. Plus, the Trustee knew about the distinction early on and confirmed that

"Cole was cooperative and supplied all the information and documents she requested." So the court could not find that Cole concealed his Coledev-related assets with an intent to hinder, delay, or defraud his creditors or the Trustee under § 727(a)(2).

**3. Count 11** alleged that Cole knowingly made a false oath under 11 U.S.C. § 727(a)(4) by concealing the value of Coledev and failing to list COLP in his schedules. After trial, PRN added that Cole made multiple false oaths about dividing his homestead.

As for Coledev, PRN complained that Cole listed its value as "undetermined," even though Cole told a bank that Coledev was valued at $3.985 million just days before filing his petition. Cole testified that the $3.985 million figure was his estimate about the amount of money the Coles had given Coledev, not its value as a going business concern. Cole testified that the latter value would be difficult to calculate and drastically different. The bankruptcy court found this testimony "credible and convincing" and thus held that Cole's oath was not false.

As for COLP and its 1% partner, W&T Cole LLC, the bankruptcy court found that Cole's omission of COLP from his Statement of Financial Affairs ("SOFA") was material. But the court found credible Cole's testimony that he inadvertently omitted COLP from his SOFA, particularly because Cole disclosed COLP as a co-obligor in his Schedule H and disclosed a COLP account that had funds during his 341 meeting. Further, Cole provided the Trustee with information about COLP once the omission was noticed, and the Trustee testified that the omission did not affect

her administration of the estate.

Finally, the bankruptcy court found that PRN had not pleaded a false oath claim about the Coles' homestead in its third amended complaint, nor had PRN mentioned the claim in its pretrial statement or posttrial brief. In the alternative, the court also found that Cole had not made a false oath about his property.

Having ruled for Cole on all counts, the bankruptcy court found that Cole's debts should be discharged.

### D. The District Court Appeal

PRN appealed to the district court. *See* 28 U.S.C. § 158(a)(1) (giving district courts jurisdiction over appeals from a bankruptcy court's final order). The district court affirmed the bankruptcy court's posttrial rulings on Counts 8, 9, and 11 on the same grounds found by the bankruptcy court. Because this Court directly considers the bankruptcy court's opinion, rather than the district court's opinion, *see In re Hoffman*, 22 F.4th 1341, 1344 (11th Cir. 2022), we do not recount the district court's reasons for affirming the bankruptcy court's rulings on Counts 8, 9, and 11.

We do, however, dive deeper into the district court's opinion on Counts 3 and 4 because the district court offered more grounds than the bankruptcy court's oral ruling. As for Count 3, the district court found that PRN pleaded that Cole was "liable as the transferor" of the $4 million, and PRN had not alleged "a basis to impute a new debt to Cole as transferor." According to the district court, "as alleged, Count III would only provide liability

against Cole for the preexisting debts of Cole of Orlando—which no one argues were obtained by fraud." The court further found that Florida law did not provide a cause of action to recover compensatory damages against the recipient of a fraudulent transfer, only "a vehicle for the equitable recovery of assets, a claim that PRN concedes is typically within the exclusive standing of the trustee."

The district court found that PRN abandoned Counts 4-6 on appeal because PRN inadequately briefed standing, the issue PRN lost in the bankruptcy court. Alternatively, the court held that PRN failed to meet its burden of proving that creditor standing could exist beyond the "[T]rustee's exclusive standing to . . . avoid fraudulent transfers." Like the bankruptcy court, the district court held that "the proper 'creditor' to bring such a claim is the trustee because, in the context of bankruptcy, the trustee has the exclusive right to seek to avoid the transfers and return the sums to the estate."

PRN now appeals to this Court.

## II. STANDARD OF REVIEW

We act as the second court of review in this bankruptcy appeal. Because the district court affirmed the bankruptcy court on all counts, we consider the bankruptcy court's decision directly. *In re Hoffman*, 22 F.4th at 1344.

We review the bankruptcy court's entry of summary judgment on Counts 3-6 *de novo*, viewing all evidence in the light

most favorable to PRN as the non-moving party, and we resolve reasonable inferences in PRN's favor. *In re Optical Techs., Inc.*, 246 F.3d 1332, 1334-35 (11th Cir. 2001).

As for the counts that went to trial, we review the bankruptcy court's conclusions of law *de novo*. *In re Colortex Indus., Inc.*, 19 F.3d 1371, 1374 (11th Cir. 1994); *In re Vann*, 67 F.3d 277, 280 (11th Cir. 1995). We review the bankruptcy court's findings of fact for clear error. *In re Chase & Sanborn Corp.*, 904 F.2d 588, 593 (11th Cir. 1990). How we review a mixed question of law and fact "depends on whether answering it entails primarily legal or factual work." *In re Stanford*, 17 F.4th 116, 121 (11th Cir. 2021) (quotation omitted). Our review is *de novo* when we must "expound on the law, particularly by amplifying or elaborating on a broad legal standard." *Id.* (quotation omitted). But our review is for clear error when we must "marshal and weigh evidence, make credibility judgments, and otherwise address . . . multifarious, fleeting, special, narrow facts that utterly resist generalization." *Id.* (alteration in original) (quotations omitted). Finally, we review the bankruptcy court's evidentiary rulings for abuse of discretion. *See In re Int'l Mgmt. Assocs., LLC*, 781 F.3d 1262, 1265 (11th Cir. 2015).

## III. DISCUSSION

As a Chapter 7 debtor, Cole is entitled to a discharge of all debts unless his Trustee, a creditor, or the United States trustee establishes either (1) one of the twelve reasons to deny a discharge listed in 11 U.S.C. § 727(a) or (2) that one or more of Cole's debts

should be individually excepted under 11 U.S.C. § 523(a). *See* 11 U.S.C § 727(b) ("Except as provided in section 523 of this title, a discharge under subsection (a) of this section discharges the debtor from all debts that arose before the date of the order for relief under this chapter . . . .").

PRN pleaded counts under § 727(a) and § 523(a). Because success under § 727(a) would prevent Cole from discharging any debts—thereby obviating the need to except individual debts under § 523(a)—we start by reviewing PRN's § 727(a) claims.

### A.  Concealment of Property (§ 727(a)(2))

Section 727(a)(2)[1] prohibits the bankruptcy court from granting a discharge if

(2) the debtor, with intent to hinder, delay, or defraud a creditor or an officer of the estate charged with custody of property under this title, has transferred, removed, destroyed, mutilated, or concealed, or has permitted to be transferred, removed, destroyed, mutilated, or concealed—

(A) property of the debtor, within one year before the date of the filing of the petition; or

(B) property of the estate, after the date of the filing of the petition . . . .

---

[1] All references to sections refer to Title 11 of the United States Code.

The only difference between subsections (A) and (B) is timing: the former covers actions taken before the petition is filed; the latter covers actions after the petition is filed.

To block Cole's discharge under § 727(a)(2)(A), PRN had to prove by a preponderance of the evidence "(1) that the act complained of was done within one year prior to the date the petition was filed, (2) with actual intent to hinder, delay, or defraud a creditor, (3) that the act was that of the debtor, and (4) that the act consisted on transferring, removing, destroying, or concealing any of the debtor's property." *In re Jennings*, 533 F.3d 1333, 1339 (11th Cir. 2008). To block Cole's discharge under § 727(a)(2)(B), PRN had to prove the same elements by a preponderance of the evidence, except the timing on the first element changes from one year before the petition is filed to a date after the petition is filed.

PRN argues that all three of the actions described in Part B of the Background section meet these elements. The Court starts with the prepetition action.

### 1. The Homestead (§ 727(a)(2)(A))

PRN claims that Cole concealed the value of his lakefront property by splitting it into two parcels less than two months before filing his bankruptcy petition.[2] The bankruptcy court

---

[2] In its third amended complaint, PRN pleaded concealment of the homestead split in Count 8 (§ 727(a)(2)(A)) but not Count 9 (§ 727(a)(2)(B)). PRN's claim is thus confined to concealment that occurred "within one year before the date of the filing of the petition," 11 U.S.C. § 727(a)(2)(A) and does not include

rejected this claim, finding that "PRN failed to prove that Cole concealed anything" because Cole publicly recorded both deeds before filing his petition; he listed both parcels on his postpetition schedules; and he told the Trustee about both parcels.

1. PRN argues that the bankruptcy court erred because it applied an unduly narrow definition of conceal. The parties rightly note that neither Congress nor this Court has defined conceal under 11 U.S.C. § 727(a). We adopt the following definition of conceal under § 727(a): "to knowingly withhold information about property or to knowingly prevent its discovery." We do so for three reasons.

First, this definition comports with the plain meaning of the word conceal, as shown by dictionary definitions at the time Congress enacted the bankruptcy code (1978) and today. *See, e.g.*, *Conceal*, Oxford English Dictionary Online, https://www.oed.com/dictionary/conceal_v (last visited Oct. 23, 2023) ("1.a. To keep (information, intentions, feelings, etc.) from the knowledge of others; to keep secret *from* (formerly also *to*) others; to refrain from disclosing or divulging. 1.b. To keep the nature or identity of (a person or thing) secret; to disguise. Now chiefly with *as*. 2.a. To hide (a person or thing); to put or keep out of sight or notice. Also: to prevent from being visible"); *Conceal*, Merriam-Webster Dictionary Online, https://www.merriamwebster.com/dictionar

---

concealment that occurred "after the date of the filing of the petition." 11 U.S.C. § 727(a)(2)(B).

y/conceal (last visited Oct. 23, 2023) ("1: to prevent disclosure or recognition of . . . . 2: to place out of sight"); *Conceal*, Webster's Third New International Dictionary (4th ed. 1976) ("1: to prevent disclosure or recognition of; avoid revelation of; refrain from revealing; withhold knowledge of; draw attention from; treat so as to be unnoticed; 2: to place out of sight; withdraw from being observed; shield from vision or notice").

Second, our sister circuits have similarly defined conceal under both § 727(a) and 18 U.S.C. § 152, which each address the concealment of assets from the bankruptcy estate. *See, e.g.*, *United States v. Turner*, 725 F.2d 1154, 1157 (8th Cir. 1984) (holding in a § 152 case that concealment includes "withhold[ing] knowledge, or prevent[ing] disclosure or recognition" (quotations omitted)); *United States v. Weinstein*, 834 F.2d 1454, 1462 (9th Cir. 1987) (affirming a § 152 conviction because concealment element met if defendant "withholds knowledge of assets about which the trustee should be told" (citation omitted)); *United States v. Grant*, 971 F.2d 799, 807 (1st Cir. 1992) ("The crime of concealment includes withhold[ing of] knowledge or prevent[ing] disclosure or recognition." (alteration in original) (quotations and emphasis omitted)); *In re Scott*, 172 F.3d 959, 967 (7th Cir. 1999) ("Concealment [for the purposes of § 727(a)] . . . includes preventing discovery, fraudulently transferring or withholding knowledge or information required by law to be made known." (omission in original) (citation omitted)); *United States v. Atkins*, 181 F.3d 91 (Table), 1999 WL 397711 (4th Cir. 1999) (finding

substantial evidence supported a § 152 conviction when defendant diverted funds from escrow account and created false documents that showed he had sent the funds to the bankruptcy court); *United States v. Thayer*, 201 F.3d 214, 224-25 (3d Cir. 1999) (upholding jury instruction in a § 152 case that defined concealing estate property to include "withholding knowledge concerning the existence or whereabouts of property, or knowingly doing anything else by which the person acts to hinder, delay or defraud any of the creditors"), *abrogated on other grounds by Skilling v. United States*, 561 U.S. 358 (2010); *United States v. Love*, 17 Fed. App'x 796, 800 n.5 (10th Cir. 2001) (finding concealment of assets from creditors when disclosure of transfers of funds "was incomplete and the purposes of the transfers were falsely identified"); *United States v. Wagner*, 382 F.3d 598, 609 (6th Cir. 2004) (holding that "'concealing' property encompasses actions designed to hinder, delay, or otherwise obstruct the ability of a trustee to account for and distribute the debtor's estate").

Third, we already use this definition in criminal proceedings. District courts read the same definition when instructing jurors in criminal cases where a debtor is accused of concealing estate property from creditors or Trustees:

> 'Conceal' has its ordinary sense of 'to hide' or 'to prevent recognition' of something. To 'fraudulently conceal' property means to knowingly withhold information about property or to knowingly prevent its discovery while intending to deceive or cheat a

>  creditor or custodian, usually for personal financial
>  gain or to cause financial loss to someone else.

Eleventh Circuit Pattern Jury Instructions (Criminal Cases) O2 (2022). We have similarly defined conceal when finding that the Government offered sufficient evidence of concealment to prove money laundering under 18 U.S.C. § 1956(a). *See United States v. Dennis*, 237 F.3d 1295, 1302 (11th Cir. 2001) (The defendant "fraudulently concealed property belonging to the bankruptcy estate because he knowingly withheld information related to the property and acted to prevent the discovery of the property, thereby intending to deceive the bankruptcy court, the estate's creditors, or the custodian."). We see no reason to define concealment differently in the civil context. *See* 6 Collier on Bankruptcy ¶ 727.02 (16th ed. 2020) ("Conduct that amounts to a concealment from creditors or from an officer of the estate charged with custody of property will in general be the same as that which constitutes a concealment under section 152 of title 18, United States Code. Cases decided under section 152 will afford helpful analogies in determining what amounts to a concealment.").

2. Using this definition, the bankruptcy court did not err in finding that Cole did not conceal his property by splitting it into two parcels because PRN presented no facts that show Cole knowingly withheld information related to the property or acted to prevent the discovery of the property. To the contrary, Cole publicly recorded both deeds and continued to pay taxes on the whole property. After Cole filed his petition, Cole told the Trustee

about the split and listed both parcels in his schedules.

Because Cole did not conceal property within one year of filing his petition, we agree with the bankruptcy court that PRN failed to prove its § 727(a)(2)(A) claim.

### 2. Coledev (§ 727(a)(2)(B))

1. As detailed in the Background section, *supra* at 6-7, Cole used Coledev LLC as his primary operating business from 2012 until he filed his petition in 2015. Bill and Terre Cole owned 99% of Coledev as a tenancy by the entirety and put millions of dollars into Coledev. The Coles would receive large sums of money back, likely when one of Cole's real estate projects ended.

In his schedules, Cole accurately disclosed the Coles' interest in Coledev, and he listed Coledev's value as undetermined. PRN claims that Cole should have also disclosed that the advances Cole made to Coledev were repayable shareholder loans. PRN argues that Cole's failure to list the advances as shareholder loans (available to the estate) amounts to the intentional, postpetition concealment of property done to defraud Cole's creditors and Trustee under § 727(a)(2)(B). Cole retorts that he correctly treated the advances as capital contributions, not shareholder loans, and thus had no intent to hinder, delay, or defraud his creditors or the Trustee.

2. The parties presented competing fact and expert testimony at trial. PRN introduced Cole's accounting records that labeled the advances as "shareholder loans payable." PRN

introduced Coledev's 2014 and 2015 tax records that treated the advances as shareholder loans. PRN presented Terre Cole's deposition testimony that she believed the advances were shareholder loans. And PRN offered an expert who opined that the advances were shareholder loans.

On the other hand, Cole testified that the advances were capital contributions. To bolster his testimony, Cole pointed out that he never created a promissory note for repayment; no interest accrued on the advances; Coledev's 2012 and 2013 tax returns treated the advances as "additional paid-in capital"; and Coledev's 2013 and 2014 financial statements did not show any shareholder loans from Cole to Coledev. Cole also presented an expert who opined that the advances were equitable contributions, not shareholder loans.

The Trustee testified that Cole did not hide or conceal any assets from her. She testified that she knew about Coledev once Cole disclosed his tax returns. She testified that she could ask Cole about Coledev's postpetition operations, and that Cole was cooperative and supplied all of the Coledev-related information that she requested. Based on the information Cole provided, the Trustee testified that she managed to object to Cole's claimed exemption of Coledev and propose a settlement of the issue.[3]

---

[3] The Trustee also testified that a third party told her that, in practice, the terms "shareholder loans" and "capital contributions" are used interchangeably. PRN objects that this testimony should not have been

After reciting this evidence, the bankruptcy court found that PRN failed to prove that "Cole concealed any property after this bankruptcy case was filed intending to hinder, delay, or defraud his creditors under § 727(a)(2)(B)."

3. We read the bankruptcy court's ruling to find that PRN failed to meet its burden of proof on both the intent and concealment elements. We affirm both findings.

As for concealment, the bankruptcy court did not clearly err in finding that Cole had not "knowingly withheld information related to the property or acted to prevent the discovery of the property" when he did not label his advances to Coledev as shareholder loans. The bankruptcy court could reasonably rely on the Trustee's testimony that Cole did not hide or conceal any information from her and that she discovered the 'loan versus equity' issue once Cole disclosed his tax returns to find that Cole was not concealing information. This finding is bolstered by the Trustee's testimony that Cole provided her with any information or documents she asked for.

As for intent, the bankruptcy court did not clearly err in finding that Cole did not intend to "hinder, delay, or defraud" PRN or the Trustee when he did not label his advances to Coledev as shareholder loans. 11 U.S.C. § 727(a)(2). The bankruptcy court heard Cole's testimony and found that Cole lacked a fraudulent

---

allowed because it was based on hearsay. We do not rely on this testimony to reach our conclusions, so we needn't consider the evidentiary objection.

intent. The bankruptcy court also heard and found credible the Trustee's testimony that Cole had concealed no information from her and had cooperated with her when she had questions about Coledev. When this Court "examine[s] the facts adduced at trial, generally we will not disturb a bankruptcy court's credibility determinations." *In re Kane*, 755 F.3d 1285, 1288 (11th Cir. 2014). We find no reason to second guess the bankruptcy court's credibility findings, especially when other evidence (*e.g.*, the lack of a promissory note or accrued interest) supports Cole's belief that he was making equitable contributions rather than loans to Coledev.

Because we find no error in the bankruptcy court's findings about concealment and Cole's intent, we affirm its denial of relief under 11 U.S.C § 727(a)(2)(B).

### 3. COLP (§ 727(a)(2)(B))

1. As explained in the Background section, *supra* at 4-6, Cole created COLP to hold the Coles' personal investments. Cole transferred about $4 million from COLP into the Coles' tenancy by the entireties in December 2011 and January 2012. Cole says that he decided to close COLP in 2010 and that the $4 million transfers that began in late 2011 were part of the winding down of COLP.

While Cole disclosed 14 businesses in his schedules, he did not disclose COLP or its 1% general partner, W&T Cole, LLC. PRN alleged that Cole violated § 727(a)(2)(B) by concealing COLP to hide the $4 million transfers from his creditors and the Trustee.

In a separate proceeding, the Trustee filed a claim against Cole to recover Cole's personal interest in the $4 million COLP transfers, arguing that Cole made the $4 million transfer to hinder PRN's collection efforts. *See* 11 U.S.C § 544(b)(1) (allowing the Trustee to avoid transfers made by the debtor that are voidable under applicable state law).

2.  Cole testified about COLP twice at trial. Cole told Judge Jackson that his failure to disclose COLP was an "inadvertent mistake." After assuming the case, Judge Jennemann recalled Cole and the Trustee to ask more questions about COLP. Cole told Judge Jennemann that he missed COLP because he had several entities that contained the name "Cole"; COLP was not listed in his record of Florida businesses because COLP was a Nevada partnership; and COLP had no valuable assets when he filed his petition. Cole also pointed out that he listed COLP as a co-obligor in another schedule; he disclosed the existence of an account held by COLP at his creditors meeting; and he gave the Trustee COLP's financial records when they discovered that Cole omitted COLP from his list of businesses.

The Trustee testified that Cole should have listed COLP on his schedules and that she (the Trustee) could not focus on COLP initially because of the omission. But the Trustee confirmed that Cole gave her testimony and documents about the $4 million COLP transfers the next time she saw Cole after COLP was discovered during the creditors' meeting.

3.  The bankruptcy court (Judge Jennemann) ruled on the Trustee's claim and PRN's claim in separate orders. In the Trustee proceeding, the court found that the Trustee proved that Cole transferred the $4 million from COLP to his tenancy by the entireties in late 2011 to hinder PRN's ability to collect on Cole's debts to PRN. As a result, the court granted partial summary judgment for the Trustee and ordered a trial to determine Cole's interest in the $4 million so that amount could be recovered for the estate. *See* 11 U.S.C. § 550(a) (allowing the Trustee to recover avoided transfers from the recipient). The parties settled that claim before trial.

In this case, the bankruptcy court found that PRN failed to prove that Cole omitted COLP from his list of businesses in 2015 with the intent to hinder, delay, or defraud PRN or the Trustee. The court found Cole to be "forthright and candid" during his supplemental testimony and found that his testimony was "credible and believable." The court found that Cole's initial listing of COLP in a different part of his schedules and Cole's prompt disclosure of COLP's records once the omission was discovered disproved PRN's theory that Cole was trying to hide COLP. So the court rejected PRN's postpetition concealment claim under § 727(a)(2)(B).

4.  We affirm. The bankruptcy court based its ruling largely on a credibility determination. As stated, we generally defer to the bankruptcy court's credibility determinations. *See Kane*, 755 F.3d at 1288. Knowing this, PRN argues that we should not apply

standard deference here because (a) Judge Jennemann told Cole that she wanted more testimony about the COLP omission, so Cole had time to prepare his supplemental answers, and (b) Cole testified by live video (Zoom), rather than in person, so the court was less capable of judging his demeanor.

Cole argues that PRN waived these arguments because PRN did not object to Judge Jennemann taking supplemental testimony, or taking the supplemental testimony by Zoom, during the bankruptcy court proceedings. PRN did not address waiver in its reply brief. Because PRN does not point to its objections to the bankruptcy court, and we have not found any, we find that PRN waived both arguments. *See Telfair v. First Union Mortg. Corp.*, 216 F.3d 1333, 1337 n.6 (11th Cir. 2000) (arguments raised to this Court and the district court, but not the bankruptcy court, will not be heard on appeal).

We also find both arguments meritless. Judge Jennemann did not err by telling the parties the topic for reexamination. Nor was her order prejudicial. Cole has known that PRN or the bankruptcy court could question him about his failure to list COLP in his schedules since PRN pleaded the allegation in its complaint. Telling Cole that the court wanted *more* testimony on a known topic did not prejudice PRN.

Nor does taking testimony by Zoom diminish the bankruptcy court's credibility findings. We generally defer to the trier of fact's credibility determination because the fact finder heard the witness's testimony and saw his demeanor, while we are stuck

with a "cold paper record." *United States v. Peters*, 403 F.3d 1263, 1270 (11th Cir. 2005). While we agree that in-person testimony is preferable to a live video stream, the bankruptcy court could hear Cole testify and watch his demeanor live. Because PRN did not object to the Zoom feed at the time, we must assume that the court was able to judge Cole's credibility the same as if Cole was sitting in the witness box. And whatever the quality of the feed, the live video stream gave the bankruptcy court greater insight into Cole's credibility than the cold paper record gives us. *See id.*

We thus give due regard to the bankruptcy court's determination that Cole's testimony was "credible and believable." Having reviewed the record, we cannot hold that this finding is clearly erroneous. As the bankruptcy court noted, Cole's testimony is backed by Cole's listing of COLP in a different part of the schedules, followed by his disclosure of COLP and COLP records in later meetings with the Trustee and creditors. While the bankruptcy court's finding that Cole fraudulently transferred COLP's assets in 2011-2012 to shield it from PRN gives us reason to question whether Cole knowingly concealed COLP's existence in 2015 to cover up his earlier fraud, it is apparent from the record that the bankruptcy court had the same concern. Unlike this Court, the bankruptcy court could recall Cole to ask him about his 2015 actions, and the court believed his answers. Because certain evidence supports that finding, we affirm it.

### B.  False Oath (§ 727(a)(4))

Section 727(a)(4) precludes the bankruptcy court from granting a discharge if the court finds, in relevant part, that "the debtor knowingly and fraudulently, in or in connection with the case, made a false oath or account. . . ." A debtor can make a false oath in his petition, in his schedules, at creditor meetings, and when giving sworn testimony. *See, e.g.*, *In re Chalik*, 748 F.2d 616, 617-19 (11th Cir. 1984) (affirming the bankruptcy court's finding that the debtor omitted relevant businesses from his schedules); *In re Whigham*, 770 Fed. App'x 540, 545-46 (11th Cir. 2019) (affirming the bankruptcy court's finding that the debtor made a false oath in court filings and during questioning); Collier on Bankruptcy, *supra*, ¶ 727.04 ("The false oath that is a sufficient ground for denying a discharge may consist of (1) a false statement or omission in the debtor's schedules or (2) a false statement by the debtor at an examination during the course of the proceedings."). The false oath must be fraudulent and material. *Chalik*, 748 F.2d at 618.

PRN argues that Cole made false oaths in connection with the same three actions discussed in the previous section. We discuss the claims in the same order as before.

### 1.  The Homestead

PRN argues that Cole made two false oaths related to his homestead property: (1) Cole wrongly described his property as two parcels in his schedules, and (2) Cole lied when he testified that he divided the property because he believed the State of Florida

owned the submerged land. The bankruptcy court found that PRN failed to plead this false oath claim in its operative complaint and that, even if it had, PRN failed to prove its claim. This Court reviews the pleading ruling *de novo*, and we review the merits ruling for clear error. We affirm both.

1. We start with pleading. Because fraud is a necessary element in a false oath claim, PRN had to meet the heightened pleading standard of Rule 9(b) of the Federal Rules of Civil Procedure. *See* Fed. R. Bankr. P. 7009 ("Rule 9 F.R.Civ.P. applies in adversary proceedings."). PRN pleaded its false oath claim in Count 11. After incorporating 66 paragraphs of general allegations, some of which described the homestead division, PRN pleaded the rest of Count 11 like this:

> The Debtor knowingly and fraudulently, in or in connection with this case has made multiple false oaths and accounts, including: i) failing to include all assets in his Schedules and SOFA while testifying under oath they were accurate; ii) failing to provide accurate information with respect to his income; iii) claiming that he is utilizing assets he claims are owed as tenancies-by-the-entirety in order to fund his lifestyle; and iv) claiming that Coledev is owned as tenancy by the entireties while recently stating under oath he was the sole owner of the same.
>
> Based upon the foregoing, Plaintiff seeks a declaration and determination that the Debtor is not eligible for

a discharge under Section 727(a)(4)(A) of the Bankruptcy Code.

While some paragraphs PRN incorporated from another part of the complaint described the homestead division, PRN did not mention Cole's homestead division in Count 11. PRN instead listed four other actions or failures to act. PRN thus failed to put Cole on notice that PRN intended to pursue a homestead-based false oath claim at trial.

PRN perpetuated the limited scope of its false oath claim when it failed to mention Cole's homestead division as part of the claim in its pretrial brief and its posttrial brief. PRN did not associate the homestead division with its false oath claim until it responded to the bankruptcy court's invitation to comment on its preliminary posttrial opinion.

We agree with the bankruptcy court that PRN failed to plead with the requisite particularity a false oath claim based on Cole's homestead division before trial. And we find no error in the bankruptcy court's refusal to amend PRN's complaint after trial to add a homestead-based false oath claim under Rule 15(b). Rule 15(b) requires Cole's express or implied consent to the amendment. Cole has not expressly consented to the amendment; he objects to it. And courts will not find implied consent "if the defendant had no notice of the new issue, if the defendant could have offered additional evidence in defense, or if the defendant in some other way was denied a fair opportunity to defend." *Cioffe v. Morris*, 676 F.2d 539, 541-42 (11th Cir. 1982). The bankruptcy court

found that it would be unfair and prejudicial to allow PRN to "fix" its pleading deficiency after the court took evidence and issued its preliminary opinion. This finding of prejudice is supported by the record and thus precludes amendment by implied consent under Rule 15(b).

2. Even if PRN pleaded a false oath claim related to Cole's homestead division, the bankruptcy court did not clearly err when it alternatively rejected the claim on the merits. The bankruptcy court found that Cole did not make a false oath when he listed his property as two parcels in his schedule because, at the time, Cole's property *was* legally divided into two parcels. Plus, Cole's attorney told the Trustee about the division before Cole filed his schedule, thus belying any argument that Cole fraudulently listed his property as two parcels. Having reviewed the record, we find no clear error with these findings.

As for Cole's testimony that he believed Florida owned the submerged land, Judge Jennemann noted that Judge Jackson had not ruled whether Cole or PRN was correct about ownership of submerged lands; she instead stated that both parties presented "reasoned arguments" and the issue was "both fascinating and complex." Based on Judge Jackson's statement that Cole's position was "reasoned," Judge Jennemann found it impossible to rule that Cole fraudulently testified under oath during the homestead exemption trial (which Judge Jackson observed) or during this trial (which Judge Jennemann observed). As stated, we generally defer to the credibility determinations of the bankruptcy courts. Because

the court did not find that Cole testified falsely under oath, we find no clear error in the bankruptcy court's rejection of PRN's testimony-based false oath claim.

—

To sum up, we find that PRN did not plead a false oath claim related to Cole's homestead division and was not entitled to a posttrial amendment to add that claim. Further, the bankruptcy court did not clearly err in its alternative ruling that PRN failed to prove a false oath claim related to Cole's homestead division. So we affirm the bankruptcy court's ruling on both grounds.

## 2. Coledev

Again, PRN argues that Cole should have listed his $1 million in advances to Coledev as "shareholder loans payable." PRN thus alleges that, when Cole signed his schedules as true and correct, despite not listing the Coledev advances as shareholder loans payable, he knowingly and fraudulently made a false oath in violation of § 727(a)(4).

The bankruptcy court found that Cole reasonably believed that the advances were equitable contributions, not shareholder loans. The court thus found that PRN failed to prove that Cole had an intention of hindering, delaying, or defrauding his creditors or the Trustee.

False oath claims under § 727(a)(4) are similar, but a bit broader, than concealment claims under § 727(a)(2) because the intent to defraud needn't be targeted at anyone, including the

creditors and Trustee. *See* Collier on Bankruptcy, *supra*, ¶ 727.04. But that distinction does not matter here because the bankruptcy court found that Cole honestly believed that the advances were capital contributions, meaning that he had no fraudulent intent when he did not list the advances as shareholder loans.

Further, "[a] debtor coming forward of his or her own accord to correct an omission is strong evidence that there was no fraudulent intent in the omission." *Id.* The Trustee testified that, once the Coledev issue was identified, Cole was cooperative and supplied all of the Coledev-related information that she requested. The bankruptcy court found the Trustee's testimony credible.

We find no reason to second guess the bankruptcy court's credibility findings, especially when other evidence (*e.g.*, the lack of a promissory note or accrued interest) supports Cole's belief that he made equitable contributions to Coledev. We thus affirm the rejection of PRN's false oath claim for failure to prove a knowing and fraudulent intent.

### 3. COLP

Finally, PRN claims that Cole violated § 727(a)(4) when he signed his Statement of Financial Activities as true and accurate despite failing to list COLP and its 1% partner, W&T Cole, LLC on his list of businesses. The bankruptcy court rejected this claim because it found Cole's omission of COLP to be "inadvertent—not intentional."

As detailed *supra* at 25, Judge Jennemann had reservations

about Cole's initial testimony on COLP, so she recalled him to testify on the topic. Judge Jennemann found Cole to be "forthright and candid," and she found his testimony "credible and believable." The bankruptcy court therefore found that PRN failed to prove that Cole intentionally and fraudulently left off COLP from his list of businesses.

For the same reasons discussed in the concealment section, *supra* at 27-29, we affirm. The bankruptcy court is in a better position than this Court to judge Cole's credibility, and we find no clear error in its determination that Cole did not knowingly and fraudulently omit COLP in violation of § 727(a)(4).

—

In sum, we affirm all of the bankruptcy court's rulings under 11 U.S.C. § 727(a), meaning that Cole was entitled to a discharge of all debts, minus any individual debt excepted under 11 U.S.C. § 523. *See* 11 U.S.C. § 727(b). We now turn to PRN's claim to except a debt under § 523(a)(2)(A), the so-called "*Husky*" claim.

### C. *Husky* Claim (§ 523(a)(2)(A))

Fraudulent transfers generally involve two parties: the transferor and the recipient. Bankruptcy debtors are usually the transferor trying to conceal assets from creditors and the estate. Four code provisions cover this scenario. If the debtor transferred assets less than a year before filing his bankruptcy petition, or after he filed his petition, then § 727(a)(2) allows the Trustee or a creditor to seek total preclusion of a discharge. If the transfer occurred less

than two years before the debtor filed his petition, then § 548(a)(1) allows the Trustee to nullify the transfer, and § 550(a) allows the Trustee to retrieve the money for the estate. If the transfer occurred more than two years before the debtor filed his petition, then § 544(b)(1) allows the Trustee to seek the same remedies (avoidance and retrieval) if the transfer is voidable under state law.

While these provisions cover the usual scenario of debtors transferring assets, sometimes the debtor *receives* a fraudulent transfer. That's where § 523(a)(2) kicks in. If someone sends the bankruptcy debtor money to fraudulently avoid his debt, the party owed the money can have the debt excepted from the recipient debtor's discharge—if the creditor can show that, under state law, the recipient took on the sender's debt.

The proceedings below and before this Court reveal much confusion about the interplay among these provisions. So we create this chart to highlight the key distinctions:

| 11 U.S.C. § 727(a)(2) | |
|---|---|
| Fraud. transfer: | Bankruptcy Debtor → Third Party |
| Timing of fraud: | Within one year of filing or postpetition |
| Relief: | No discharge of any debt |
| Who can file: | Trustee, Creditor, or U.S. Trustee |
| **11 U.S.C. § 548(a)(1)(A)** | |
| Fraud. transfer: | Bankruptcy Debtor → Third Party |

| | |
|---|---|
| Timing of fraud: | Within two years before filing the petition |
| Relief § 548: | Avoidance (nullification) of transfer |
| Relief § 550(a): | Estate ⟵ Third Party |
| Who can file: | Trustee |

**11 U.S.C. § 544(b)(1)**

| | |
|---|---|
| Fraud. transfer: | *Bankruptcy Debtor* ⟶ Third Party |
| Timing of fraud: | Governed by applicable state law |
| Relief § 544: | Avoidance (nullification) of transfer |
| Relief § 550(a): | Estate ⟵ Third Party |
| Who can file: | Trustee |

**11 U.S.C. § 523(a)(2)(A)**

| | |
|---|---|
| Fraud. transfer: | Third Party ⟶ *Bankruptcy Debtor* |
| Timing of fraud: | Governed by applicable state law |
| Relief: | Except discharge of traceable debt |
| Who can file: | Creditor |

In separate proceedings, PRN and the Trustee invoked one of these provisions to challenge the $4 million COLP transfers. The Trustee sought to nullify the transfers under § 544(b)(1) and retrieve Cole's personal interest in the money under § 550(a)(1). The Trustee and Cole settled this claim for $350,000.

In Count 3, PRN sought to except a debt that, PRN claims,

Cole assumed from COLP under § 523(a)(2)(A).[4] PRN alleged that when Cole caused COLP to transfer $4 million to the Coles' TBE account, Cole obtained both COLP's money and COLP's contribution debt to PRN arising from PRN's payment of the SunTrust loans. PRN did not ask to retrieve or set aside Cole's personal interest in the $4 million transfer.[5] Rather, PRN asked for a discharge exception so that it can collect COLP's contribution debt from Cole.

The bankruptcy court summarily dismissed Count 3, finding "that PRN is asking for a cause of action that just isn't there, and to the extent that it ever could be there, it would belong to the Trustee." We understand the bankruptcy court's ruling to mean that (a) PRN failed to plead a viable claim under § 523(a)(2)(A) but, if it did, (b) the Trustee's action to avoid the transfer under § 544(b) and to retrieve Cole's personal interest in COLP's assets under § 550(a) preempted PRN's § 523(a)(2)(A) discharge exception claim. As a result, the bankruptcy court did not consider the merits of

---

[4] PRN pleaded various challenges to the COLP transfers in Counts 3-6 of its complaint. The district court held that PRN waived Counts 4-6 on appeal because of inadequate briefing. PRN does not challenge that ruling in its briefs, and PRN expressly dropped Counts 5-6 in its opening brief. PRN primarily focused on Count 3 in its later briefing and at argument. So we limit our review to Count 3. Counts 4-6 remain dismissed.

[5] Unlike Count 3, PRN requested that Cole's 49.5% personal interest in COLP's assets be deemed non-dischargeable in Count 4. This may explain why the bankruptcy and district courts held that the Trustee's action preempted Cole's action and why Cole shies away from that count on appeal.

PRN's claim.

As explained below, we find that the bankruptcy court erred on both counts: viability and preemption. To explain why, though, we must first dive deeper into § 523(a)(2)(A) and the case that lends its name to claims filed under that provision: *Husky Int'l Elecs., Inc. v. Ritz*, 578 U.S. 355 (2016).

### 1. Defining a *Husky* claim

Pared down to its relevant part, § 523(a)(2)(A) says that an otherwise complete discharge under § 727 "does not discharge an individual debtor from any debt . . . for money . . . to the extent obtained by . . . actual fraud." The Supreme Court has clarified that the phrase "to the extent obtained by" modifies "money," not "any debt." *Cohen v. de la Cruz*, 523 U.S. 213, 218 (1998). Section 523(a)(2)(A) thus "turns on how the money was obtained." *Bartenwerfer v. Buckley*, 598 U.S. 69, 72 (2023). If the debtor obtained money by actual fraud, then "any debts 'traceable to' the fraudulent conveyance will be nondischargeable under § 523(a)(2)(A)." *Husky*, 578 U.S. at 365 (citations omitted).

To define a viable claim under this provision, we look to the Supreme Court's decision in *Husky* and our most detailed treatment of *Husky*: *In re Gaddy*, 977 F.3d 1051 (11th Cir. 2020).

1. *Husky* shares an important fact with this case: The bankruptcy debtor, Daniel Ritz, used companies he controlled to both send and receive money by actual fraud. Ritz was the director and 30% owner of Chrysalis Manufacturing Corp. *Husky*, 578 U.S.

at 357. Chrysalis bought electronic parts from Husky International Electronics. *Id.* Chrysalis owed Husky about $164,000 when Ritz used his power as Chrysalis' director to transfer at least $270,000 to other businesses Ritz controlled, making Chrysalis unable to pay its $164,000 debt to Husky when Chrysalis filed for bankruptcy. *Id.* at 357-58.

Husky sued Ritz under a Texas veil piercing statute that makes shareholders liable for corporate debts if the shareholder committed actual fraud. *See* Tex. Bus. Orgs. Code Ann. § 21.223(b). Ritz later filed for Chapter 7 bankruptcy, and Husky filed a claim for exception under 11 U.S.C. § 523(a)(2)(A), arguing that under Texas's veil piercing statute, Ritz obtained Chrysalis' debt to Husky when he caused Chrysalis to transfer money to other Ritz-owned companies. *Husky*, 578 U.S. at 358.

The district court agreed with Husky that Ritz was liable for Chrysalis' debt under Texas law but held that § 523(a)(2)(A) did not apply because Ritz did not obtain Chrysalis' debt by actual fraud. *Id.* at 358. The Fifth Circuit affirmed, finding that Ritz did not commit actual fraud because the transfer of money from one Ritz company to other Ritz companies did not involve a fraudulent misrepresentation. *Id.* at 358-59.

The Supreme Court reversed, finding that "actual fraud . . . can be effected without a false representation." *Id.* at 359 (quotations omitted). Actual fraud "is not in dishonestly inducting a creditor to extend a debt. It is in the acts of concealment and hinderance." *Id.* at 362.

After rejecting the Fifth Circuit's rationale, the Court then tackled two other arguments relevant here. First, the Court rejected Ritz's argument that Husky's reading of § 523(a)(2)(A) made the provision redundant with § 727(a)(2). The Court noted that, while both provisions "could cover some of the same conduct, they are meaningfully different" in scope and timing. *Id.* at 364. As for scope, the Court noted that relief under § 727(a)(2) is the broader, "blunt remedy" of blocking the discharge of any debt. *Id.* As for timing, the Court noted that a § 727(a)(2) claim arises only in the year before the petition is filed, a limitation that does not apply to § 523(a)(2)(A). *Id.* Because the two provisions differ in timing and scope of relief, creditors can use either (if available).

Second, the Court rejected Ritz's argument that debts are not "obtained by" a fraudulent transfer of monies because the person who sent the money—the transferor—was already in debt to the creditor when the transfer occurred:

> It is of course true that the transferor does not 'obtain' debts in a fraudulent conveyance. But the recipient of the transfer—who, with the requisite intent, also commits fraud—can 'obtain' assets 'by' his or her participation in the fraud. If that recipient later files for bankruptcy, any debts 'traceable to' the fraudulent conveyance will be nondischargeable under § 523(a)(2)(A). Thus, at least sometimes a debt 'obtained by' a fraudulent conveyance scheme could be nondischargeable under § 523(a)(2)(A). Such

> circumstances may be rare because a person who
> receives fraudulently conveyed assets is not
> necessarily (or even likely to be) a debtor on the verge
> of bankruptcy, but they make clear that fraudulent
> conveyances are not wholly incompatible with the
> 'obtained by' requirement.

*Id.* at 365 (citations and footnote omitted) (cleaned up). In short, the Court agreed that § 523(a)(2)(A) cannot apply to the party who fraudulently transferred money because his debt preexisted the fraud. But while it "may be rare," *id.*, § 523(a)(2)(A) can apply to the party who received the money because his debt resulted from the fraudulent transfer.

The Supreme Court remanded the case to the Fifth Circuit, who in turned remanded to the bankruptcy court to determine whether Ritz assumed Chrysalis' debt to Husky under Texas's veil piercing law. *See In re Ritz*, 832 F.3d 560, 565-66 (5th Cir. 2016). The bankruptcy court tried the case and found that, through actual fraud, Ritz "became personally liable to Husky by virtue of the Texas veil-piercing statute." *In re Ritz*, 567 B.R. 715, 773 (Bankr. S.D. Tex. 2017). Because Ritz's debt could be traced to his fraudulent receipt of money, the bankruptcy court held that § 523(a)(2)(A) precluded Ritz from discharging the debt. *Id.*

2. Our *Gaddy* decision starts with facts similar to this case. The bankruptcy debtor, Jerry Gaddy, took part in a real estate development project. In 2006, Gaddy's business, Water's Edge LLC, received two loans from Vision Bank, who we will call SEPH

going forward based on a later merger. *Gaddy*, 977 F.3d at 1054. Gaddy personally guaranteed the SEPH loans for just over $10 million when they were made, then increased his guarantee to $12.5 million in 2008. *Id.*

The project had more than 30 guarantors, including Gaddy. The project became troubled in 2009, and SEPH warned the guarantors of potential default. Less than two weeks later, Gaddy started transferring property to an LLC he created for his wife and daughter. *Id.* Gaddy continued these transfers through 2014.

Water's Edge defaulted on the SEPH loans in 2010. So SEPH demanded Gaddy pay the loans as the guarantor, and SEPH sued Water's Edge, Gaddy, and other guarantors to reclaim its losses on the project. SEPH won the lawsuit, including a $9.1 million judgment against Gaddy. *Id.* All the while, Gaddy kept transferring assets to his wife and daughter.

So SEPH sued Gaddy and his wife (and later their daughter) under Alabama's fraudulent transfer law. *Id.* Gaddy, in turn, filed for Chapter 7 bankruptcy. *Id.* Relying on *Husky*, SEPH argued that the transfers from Gaddy to his family amounted to actual fraud, thus requiring the bankruptcy court to except SEPH's $9.1 million judgment against Gaddy under § 523(a)(2)(A). The bankruptcy court rejected the exception, finding that SEPH could not allege or prove that Gaddy's debt to SEPH "was obtained by fraud or was anything other than a standard contract debt." *Id.* at 1055.

We affirmed. We noted that, "for a debt to be exempt from

discharge under § 523(a)(2)(A), the money or property giving rise to the debt must have been 'obtained by' fraud, actual or otherwise." *Id.* at 1057. But the "Water's Edge debt existed long before Gaddy began transferring his assets, and that debt is an ordinary contract debt that did not arise from fraud of any kind." *Id.* at 1058. In other words, Gaddy's debt was not traceable to the fraudulent transfer of money to his family; Gaddy's debt resulted from the non-fraudulent guarantee of the SEPH loans. So § 523(a)(2)(A) could not apply.

—

Taken together, *Husky* and *Gaddy* teach that, for a creditor to except a debt under § 523(a)(2)(A), the creditor must show that (a) the bankruptcy debtor obtained money, property, or services by actual fraud; and, (b) the debt to be excepted resulted from the debtor's fraudulent receipt.[6] Further, § 523(a)(2)(A) can only apply to the recipient of a fraudulent transfer because the transferor did not "obtain" money, property, or services, and his debt necessarily resulted from an earlier event.

With these requirements in mind, we now turn to the bankruptcy court's ruling that PRN failed to plead a viable *Husky* claim, or if it did, the Trustee's action preempted PRN's claim.

---

[6] As long as fraud was involved when the debtor obtained the assets, the debtor need not be the party who committed the fraud for § 523(a)(2)(A) to apply. *See Bartenwerfer*, 598 U.S. at 83.

### 2. Viability

We find that PRN pleaded a viable claim of exception under § 523(a)(2)(A). PRN alleges that Cole obtained money by actual fraud—*i.e.*, the transfer of money from a non-exempt limited partnership to an exempt TBE account to hinder PRN's claim for the money. And PRN alleges that, under state law, Cole took on COLP's debt when he fraudulently obtained COLP's money.

Placing PRN's allegations in our chart shows that PRN's claim mirrors the claim in *Husky*, not *Gaddy*:

| Husky's § 523(a)(2)(A) Claim against Ritz | |
|---|---|
| Original debt: | Chrysalis owes Husky |
| Fraud. transfer: | Chrysalis ⟶ Ritz-controlled companies |
| Traceable debt: | Yes. Under Texas law, Ritz took on Chrysalis' debt because of the fraud. |
| **PRN's § 523(a)(2)(A) Claim against Cole** | |
| Original debt: | COLP owes PRN a contribution debt |
| Fraud. transfer: | COLP ⟶ Cole's TBE |
| Debt transfer: | Yes. Under Nevada law, Cole took on COLP's debt because of the fraud. |
| **SEPH's § 523(a)(2)(A) Claim against Gaddy** | |
| Original debt: | Gaddy owes SEPH via loan guarantee |
| Fraud. transfer: | Gaddy ⟶ Gaddy's wife and daughter |

| Traceable debt:   No. Gaddy already had the debt. |
| --- |

Because PRN's claim fits within the plain language of § 523(a)(2)(A) and mirrors the *Husky* claim in all relevant parts, we find that the bankruptcy court erred when it found that PRN did not plead a viable cause of action in Count 3.

We also disagree with the district court's additional findings that (a) PRN pleaded transferor liability, rather than recipient liability, and (b) under state law, Cole could not obtain COLP's debt when he obtained COLP's money by actual fraud. To explain why, we must first choose between PRN's alternate pleading of Nevada and Florida law.

1. Nevada's alter ego law applies. Circuit courts have split when choosing between federal and state choice of law rules in bankruptcy. *See In re First River Energy, LLC*, 986 F.3d 914, 924 n.19 (5th Cir. 2021) (noting the split). In an unpublished opinion, we have stated that federal courts apply the forum state's choice of law rules in bankruptcy cases. *Mukamal v. Bakes*, 378 Fed. App'x 890, 896 (11th Cir. 2010). But we needn't decide whether to officially adopt that rule here because both federal and Florida law tell us to apply the Restatement (Second) of Conflict of Laws and thus would lead to the same result. *See Bishop v. Fla. Specialty Paint Co.*, 389 So. 2d 999, 1001 (Fla. 1980) (looking to the Restatement (Second) for choice of law issues); *First River Energy*, 986 F.3d at 924 (not deciding between Texas or federal choice of law rules because both bodies of law reached the same result by pointing to the Restatement (Second)).

The Restatement says that courts must follow "a statutory directive of its own state on choice of law." Restatement (Second) of Conflict of Laws, § 6(1) (Am. Law Inst. 1977). If the state has not adopted a statute that directs the choice of law, the Restatement requires courts to consider seven factors listed in § 6(2).

Florida has a statute on point, so the statute controls. *Id.* § 6(1). COLP is a limited partnership organized in Nevada. Section 620.1901(1) of the Florida Statutes provides that "[t]he laws of the state or other jurisdiction under which a foreign limited partnership is organized govern relations among the partners of the foreign limited partnership and between the partners and the foreign limited partnership *and the liability of partners as partners for an obligation of the foreign limited partnership*." (emphasis added). Because COLP is foreign to Florida, Nevada law governs the liability of COLP's partners for COLP's obligations.

2. Nevada law says that an individual cannot be personally liable for a corporation's debt unless the individual "acts as the alter ego of the corporation." Nev. Rev. Stat. § 78.747. A person acts as a corporation's alter ego "only if: (a) The corporation is influenced and governed by the person; (b) [t]here is such unity of interest and ownership that the corporation and the person are inseparable from each other; and (c) [a]dherence to the notion of the corporation being an entity separate from the person would sanction fraud or promote a manifest injustice." *Id.*

The Supreme Court of Nevada answered three relevant certified questions about this statute in *Magliarditi v. TransFirst*

*Group, Inc.*, 135 Nev. 681, No. 73889, 2019 WL 5390470, at \*1 (filed Oct. 21, 2019) (unpublished disposition).[7] First, the court said that creditors can file a cause of action against the alter ego to make him personally liable for the corporation's debt. *Id.* at \*2-3. Second, the court said that § 78.747 applies to partnerships, in addition to corporations. *Id.* at \*3. And third, the court said that the alter ego becomes a "debtor" (*i.e.*, "a person who is liable on a claim" of the creditor) when the alter ego violates Nevada's version of the Uniform Fraudulent Transfer Act. *Id.* at \*4-5 (looking at Nev. Rev. Stat. § 112.140, *et seq.* (2017)).

Applying the high court's reading of Nevada law here, PRN can plead a state law alter ego claim against Cole for fraudulently transferring COLP's assets to the Coles' TBE, and if PRN proves that claim, Cole becomes liable for COLP's contribution debt to PRN. Because Cole's debt to PRN arises from his role in a fraudulent transfer—or, as § 523(a)(2)(A) puts it, Cole would possess a "debt for money . . . obtained by . . . actual fraud"—PRN has pleaded a viable *Husky* claim.

3. Cole argues that even if PRN could plead a viable *Husky* claim, the district court rightly affirmed the dismissal of Count 3 because PRN pleaded transferor liability like *Gaddy*, rather than recipient liability like *Husky*.

---

[7] *Magliarditi* is unpublished. Rule 36(c) of the Nevada Rules of Appellate Procedure states that an unpublished opinion may be cited for its persuasive value and citations must be to an electronic database. We cite Westlaw.

As explained, we agree with Cole that the party who fraudulently transfers money to avoid paying an existing debt is not subject to § 523(a)(2)(A)'s exception because that party did not "obtain" money by fraud and his (preexisting) debt is not traceable to the fraudulent transfer. *See Gaddy*, 977 F.3d at 1057-58. But COLP would be the forbidden transferor here, not Cole, because COLP, not Cole, possessed the debt at issue before the transfer.

Count 3 properly alleges that, by application of Nevada law, Cole became liable for COLP's debt when Cole fraudulently obtained COLP's assets:

94.  Pursuant to Nevada common law and Nevada Revised Stated [sic] Section 78.746, the Debtor is liable to PRN for the subsequent fraudulent transfers and conversions made by Cole [of] Orlando. . . .

103. By causing Cole of Orlando to make the [$4 million transfers], the Debtor obtained debts owed to PRN which are the subject of this Count against the Debtor.

104. By causing the [$4 million transfers], the Debtor obtained assets that are directly traceable to the transfers from Cole of Orlando because he obtained the right to the whole of the assets transferred and he conspired with [Terre] Cole to hinder, delay[,] or defraud PRN by

transferring the assets.

As discussed, under Nevada law, PRN must prove that Cole (as COLP's alter ego) forced COLP to transfer its assets to establish that Cole became responsible for COLP's debt to PRN when he obtained COLP's assets. So when PRN pleaded that Cole caused the COLP transfers, PRN did so out of necessity—not out of error.

—

In sum, PRN pleaded facts in Count 3 that, if proved, would show that (a) Cole obtained COLP's money by actual fraud, and as a result, (b) Cole became responsible for COLP's debt to PRN. As a result, the bankruptcy court erred in holding that PRN did not state a viable cause of action to except that debt from discharge under 11 U.S.C. § 523(a)(2)(A).

### 3. Preemption

Alternatively, the bankruptcy court held that, even if PRN had a viable cause of action stemming from the COLP transfers, "it would belong to the Trustee," who sought to avoid the transfers under § 544(b) and retrieve Cole's portion of the money under § 550(a). Cole casts this ruling as one of standing and argues that the Trustee had exclusive standing to challenge the COLP transfers under § 544(b). We disagree.

1. For starters, Cole raises a question of preemption, not standing. Assuming the pleaded facts are true, PRN meets the requirements for Article III standing: (1) the fraudulent transfers injured PRN by rendering COLP unable to pay its debt to PRN; (2)

Cole caused PRN's injury by causing COLP to transfer its money to an exempt TBE account; and, (3) excepting from discharge any debt traceable to Cole's fraudulent receipt of COLP's money would redress PRN's injury because PRN could seek payment from Cole. *See Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560-61 (1992) (listing the elements of standing). And Congress gave creditors like PRN the ability to seek exceptions to redress their injuries. *See* 11 U.S.C. § 523(c)(1) (permitting creditors to request an exception under § 523(a)(2) and requiring notice and a hearing before the bankruptcy court can determine whether to except the challenged debt from discharge).

As a result, the question is not whether PRN had standing to plead its § 523(a)(2)(A) claim or whether the bankruptcy court had subject matter jurisdiction to hear PRN's claim. They did. Rather, the question is whether the Trustee's action to avoid the $4 million transfers under § 544(b)(1) and recover Cole's personal interest in the money under § 550(a)(1) preempted PRN's statutory right to seek a discharge exception for a debt owed to it.

2.  The Trustee's § 544(b) action did not preempt PRN's § 523(a) action. No Code provision extinguishes a creditor's right to seek a discharge exception under § 523(a)(2)(A) because the Trustee seeks to avoid a fraudulent transfer under § 544(b) or § 548(a) or the full denial of discharge under § 727(a). Nor does it appear that Congress intended Trustees to have exclusive authority to press claims based on fraudulent transfers. For example, if a fraudulent transfer happens within one year of the

petition, Congress gives the Trustee *and* creditors the right to challenge the discharge under § 727(a)(2). *See* 11 U.S.C. § 727(c)(1). This case proves that both can challenge a fraudulent transfer under § 727(a)(2): PRN challenges the Coledev transfers under § 727(a)(2) in this appeal, without a standing or preemption challenge, *see* Parts III(A)(2), (B)(2), despite the Trustee settling the same § 727(a)(2) claim in her own action.

Further, Congress added "actual fraud" to § 523(a)(2)(A) as part of the Bankruptcy Reform Act of 1978. *See Husky*, 578 U.S. at 359. As the Supreme Court noted about this addition in *Husky*, when "Congress acts to amend a statute, we presume it intends its amendment to have real and substantial effect." *Id.* (quotation omitted). If Cole is correct that Trustees have exclusive authority to challenge fraudulent transfers under §§ 544 and 548, then Congress' addition of "actual fraud" to creditors' § 523 arsenal was meaningless. Courts must allow creditors to raise "actual fraud" claims under § 523(a)(2)(A), even if Trustees can raise avoidance claims under § 544(b) or § 548(a), to give that provision real and substantial effect.

Finally, Trustees and creditors have different interests, and thus seek different outcomes, when they invoke Chapter 5 to challenge a fraudulent transfer. When a Trustee invokes § 544 or § 548, plus § 550, he seeks to nullify the transfer and recover the money for the benefit of *all* creditors. On the other hand, when a creditor invokes § 523(a), he does not seek to bring the money back to the estate to divvy up among the creditors. Rather, the creditor

wants the recipient to *keep* the money so that the creditor alone can collect it after the bankruptcy court excepts the corresponding debt from discharge under § 523(a)(2)(A). Simply put, a Trustee action cannot preempt the field of fraudulent transfer actions because creditors are playing on a different field. *See Husky*, 578 U.S. at 364 (rejecting Ritz's argument that allowing creditors to raise "actual fraud" claims under § 523(a)(2)(A) makes § 727(a)(2) redundant because "[a]lthough the two provisions could cover some of the same conduct, they are meaningfully different").

3. To be clear, we are not saying that the settlement of the Trustee's § 544(b) avoidance claim is meaningless. As PRN concedes, Cole may have a viable argument for satisfaction or double recovery if (a) PRN succeeds in obtaining a judgment that requires Cole to pay COLP's portion of the SunTrust contribution debt and (b) Cole can show that PRN included that debt as part of the proof of claim that Cole's estate paid in the underlying bankruptcy case. But we leave those 'ifs' for another day. Today, our holding is limited: The Trustee's § 544(b) avoidance action does not preempt Cole's § 523(a)(2)(A) action for a discharge exception.

—

To sum up, Congress gave PRN the right to request an exception of COLP's contribution debt, if PRN can prove that Cole fraudulently obtained COLP's money, and as a result, became responsible for COLP's contribution debt. PRN has pleaded facts that, if proved, meet these requirements. And the Trustee's action

to avoid the same fraudulent transfer does not preempt PRN's right to seek a discharge exception.

Because the bankruptcy court dismissed PRN's claim based on non-viability and lack of standing, the bankruptcy court did not rule on the merits of Cole's motion for summary judgment. We thus remand the case for the bankruptcy court to determine in the first instance whether any facts material to Count 3 are genuinely disputed, and if not, whether Cole is entitled to judgment on Count 3. *See* Fed. R. Civ. P. 56(a).

## IV. CONCLUSION

We **REVERSE** the bankruptcy court's order granting summary judgment for Cole on Count 3 and **AFFIRM** the court's orders granting judgment for Cole on all other counts. We **REMAND** the case to the district court for further proceedings consistent with this opinion.